UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

ROCHELLE L. HOFFMAN,

    Plaintiff,

-vs-                                                        Case No:  23-cv-853

BOARD OF REGENTS OF THE UNIVERSITY
OF WISCONSIN SYSTEM, JAMES C. SCHMIDT,
AND TERESA O'HALLORAN

    Defendants.

---

## COMPLAINT

---

NOW COMES the plaintiff Rochelle L. Hoffman by her attorneys FOX & FOX, S.C. and as and for a complaint against the defendants, Board of Regents of the University of Wisconsin System, James C. Schmidt, and Teresa O'Halloran states as follows:

### NATURE OF THE CASE

1.    This is a civil action alleging racial discrimination in employment and retaliation for complaining about racial discrimination in violation of plaintiff's rights under Title VII, 42 U.S.C. § 2000e *et seq*, the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1981, also pursuant to § 1983.

2. Plaintiff seeks compensation for the injuries she sustained including past and future loss of wages and benefits, psychological injury, emotional distress, loss of reputation, career damage, and attorney fees and costs. Plaintiff will continue to suffer these damages in the future.

## ADMINISTRATIVE PREREQUISITES

3. Plaintiff has complied with all administrative prerequisites for suit under Title VII. She filed timely claims of race discrimination and retaliation with the Equal Employment Opportunities Commission ("EEOC") on November 13, 2022, and on November 7, 2023 the EEOC issued plaintiff a Notice of Right to Sue.  More than 180 days have passed since the plaintiff filed her claims with the EEOC.

## JURISDICTION AND VENUE

4. This court has subject matter jurisdiction over plaintiff's claims under 28 U.S.C. §§ 1331 and 1343.

5. The Western District of Wisconsin is a proper venue for this action under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to plaintiff's claims occurred in this district.

## PARTIES

6. Plaintiff, Rochelle L. Hoffman, is an adult resident of the State of Wisconsin currently residing at 8429 Domino Road, Tomah, Wisconsin 54660.  At all times relevant to this complaint plaintiff was employed by the University of Wisconsin--Eau Claire. The plaintiff is Caucasian and identifies as white.

7. Defendant Board of Regents of the University of Wisconsin System ("the Board") is an agency of the State of Wisconsin, established under Wisconsin Statutes, Chapter 36, with its principal place of business located at 1220 Linden Drive, Madison, Wisconsin 53706. The Board is the governing body for the University of Wisconsin System Schools including the University of Wisconsin--Eau Claire.

8. Defendant James C. Schmidt ("Schmidt") is Chancellor of the University of Wisconsin-Eau Claire and is sued individually and in his official capacity as Chancellor. His principal place of business is Schofield Hall 204, 105 Garfield Avenue, Eau Claire, Wisconsin 54701.

9. Chancellor Schmidt is the Chief Executive of the University of Wisconsin-Eau Claire, pursuant to Wis. Stat. § 36.01(5). He was appointed to his position in July 2013, and has statutory responsibility for the administration and operation of the institution including responsibility for the reorganization of the Division of Equity, Diversity, Inclusion, and Student Affairs and the creation of a new Office of Multicultural Student Services, which is discussed in detail, *infra*.

10. All actions alleged in this complaint to have been taken by defendant Schmidt were taken under color of state law within the meaning of 42 U.S.C. § 1983 and while carrying out his duties as a public officer or employee and within the scope of his employment by the Board.

11. Defendant Teresa O'Halloran ("O'Halloran") has her principal place of business at Schofield Hall 101, 105 Garfield Avenue, Eau Claire, Wisconsin 54701. She is being sued both individually and in her official capacity as Director of Affirmative Action and Title IX Coordinator

12. All actions alleged in this complaint to have been taken by defendant O'Halloran were taken under color of state law within the meaning of 42 U.S.C. § 1983 and while carrying out her duties as a public employee and within the scope of her employment as Director of Affirmative Action and Title IX Coordinator.

## STATEMENT OF FACTS

**A.  The creation of the new Office of Multicultural Student Services**

13. In early January 2022 Olga Diaz, former Vice Chancellor of Equity, Diversity, Inclusion and Student Affairs ("EDISA"), initiated a reorganization of the EDISA division that included the merger between the Office of Multicultural Affairs ("OMA") and Blugold Beginnings ("BB") and creation of a new Office of Multicultural Student Services ("MSS").

14. The decision to merge OMA and BB stemmed from the similarities between the two programs; both had an outreach component, both programs did student of color engagement and both programs had student interns.

15. The new structure of the department would consolidate staff and feature one director, an assistant director, a university services programs associate, five coordinators, a graduate assistant and twelve interns.

16. In late January 2022 Vice Chancellor Diaz appointed Rochelle Hoffman to the position of Interim Director of MSS. Diaz anticipated that Hoffman would fill the role of Interim Director of MSS at least until the permanent position was filled and that she would then move into a permanent position as Assistant Director of MSS.

17. In discussing Hoffman's role Diaz and Hoffman agreed that she would receive overload pay for performing additional duties as Interim Director of MSS.

18. This organizational structure and Hoffman's Interim Director position were announced at the first OMA and BB merge open house informational meeting, held February 14, 2022. They were also reported in the student newspaper.

19. Vice Chancellor Diaz named Hoffman Interim Director of MSS and, later, Assistant Director of MSS because she was the coordinator with the longest record of service, highest retention rate for diverse students served and the highest-ranking person in the merged departments, having previously served as Assistant Director of BB.

**B.   Hoffman was highly qualified for the positions of Interim Director and Assistant Director of MSS.**

20. Hoffman was highly qualified for the positions of Interim Director and Assistant Director of MSS. She had an undergraduate degree in Education, specializing in Urban Education, a master's degree in education from the

5

University of Wisconsin Eau Claire, and she was currently working toward a Doctoral Degree in Education.

21. Hoffman worked for BB for six years, first as a volunteer and then as Student Services Coordinator and then Assistant Director of the program. Hoffman was passionate about her work.

22. As coordinator and assistant director for BB Hoffman created and managed programming for students of color and for low income and first-generation college students.

23. Hoffman taught classes and created new classes to improve retention, grade point averages and graduation rates for these groups. Hoffman had the highest retention rate of any coordinator working in either BB or OMA.

24. In Hoffman's most recent performance reviews while she was working in BB and then MSS she was rated as "exceeds expectations" and "outstanding."

25. Despite Hoffman's exceptional qualifications, however, students, faculty and staff opposed her appointment to Interim Director of MSS solely because she was white. It was exclusively Hoffman's identity as white that was the issue; criticism was about her race and color, not her qualifications.

C. **Criticism was about Hoffman's race and color, not her qualifications**

26. During the first Open House forum in February 2022 a student asked, "You hired a white woman as the Interim Director?" Another student

6

asked, "Do you personally feel white staff can do as effective a job as a person of color, within a space for people of color?"

27. Other students said, "We don't want white people in the MSS office", "Our heritage months are not for the campus, they are for us only" and, "Will you hire white people?"

28. Similar comments were made during subsequent open house forums held March to May 2022. Students, faculty, and staff expressed that they "didn't want white people overseeing spaces intended to serve students of color" and that they "didn't want a white woman in charge of the MSS office" --- referring to Hoffman.

29. At the Open House forums students wanted Diaz to promise she would hire people of color to work in MSS. There was an absolute sense that any position formerly held by a person of color needed to be filled by a person of color, preferably a person with the same profile to maintain the affinity-based model.

30. The affinity model that had been in use at the University of Wisconsin-Eau Claire was premised on the idea that for a student to be well served, they needed to be assigned a coordinator of the same ethnic background and that a white person could not adequately support a student of color.

31. The previous directors for OMA and BB, Dang Yang, an Asian male, and Demetrius Smith, a Black male, who had resigned, were persons of

7

color and students, faculty and staff objected to their being replaced by a white woman, Hoffman.

32. The affinity model that had been in use at the University of Wisconsin-Eau Claire was racially biased and violated federal civil rights laws.

33. In February 2022 Vice Chancellor Diaz met with a group of faculty lead by Rose Marie Avin, Heather Ann Moody, David Shih, and several others to discuss their concerns about retention of staff of color within the EDISA division.

34. During the meeting, these faculty expressed concern about the "optics" of people of color being replaced by white people, implying there were issues with Diaz's selection of Hoffman, a white female. Again, they were not concerned about Hoffman's ability. They were concerned about the optics of her race.

35. In February/March 2022 the student senate adopted a resolution entitled, "In Condemnation of the Office of Multicultural Affairs and Blugold Beginnings Merger", which in part stated there were "concerns over placing white identifying individuals in positions of interim leadership for major EDI offices", which was a reference to Hoffman.

36. Coworkers and staff also opposed Hoffman's appointment to Interim and then Assistant Director because she was white. Maggie Jensen, a former OMA coordinator told Hoffman her "identity as white" was a significant problem for Jensen and that as the longest serving staff of color Jensen should have been asked to be the Interim Director.

37. At an OMA/BB staff meeting in early March 2022 Jensen said she agreed with the student senate resolution to not include white people in the OMA office. Around this time Jensen also stopped sharing her Outlook Calendar with Hoffman.

38. Jensen also refused to accept most of Hoffman's proposals for the merger, for example, when drafting job descriptions for the interns Hoffman suggested that they blend elements from both OMA and BB job descriptions, but Jensen refused, insisting on advancing a proposal based solely on the OMA job description.

39. Jensen was consistently hostile and argumentative toward Hoffman, and she questioned almost all of Hoffman's decisions. Jensen's hostility toward Hoffman spilled over, and other staff she had been friendly with stopped talking to her altogether.

40. Throughout the merger Hoffman made numerous attempts to repair her relationship with Jensen, or at least maintain a cordial relationship with her, but Jensen rejected all Hoffman's efforts.

**D. Hoffman was forced to demote from her positions as Interim Director and then Assistant Director**

41. On June 30, 2022, an anonymous complaint was filed against Hoffman with the Office of Affirmative Action stating Hoffman's presence made the complainant feel uncomfortable and that it was hard for her to speak openly in a space made for her.

9

42. On July 12, 2022, Hoffman met with Teresa O'Halloran from Affirmative Action and Vice Chancellor Diaz to discuss the student complaint.

43. O'Halloran said action needed to be taken because this was a hostile work environment for Hoffman and that she should be moved to either Activities Involvement, and Leadership ("AIL") or Student Support Services ("SSS") for her personal and professional safety. Vice Chancellor Diaz said she would follow the recommendation of the Affirmative Action Office.

44. Hoffman did *not* request to move, rather she was told by Affirmative Action this was a hostile work environment for her, and she *had* to move. Hoffman was told to decide which office she would prefer to move to and, ultimately, she chose SSS and then transferred September 1, 2022.

45. In mid-July 2022 an intern at MSS asked Hoffman if she was going to be fired because she was white, stating he was uncomfortable being in the office without her.

46. In mid-August 2022 a Student Services Coordinator told Hoffman that everyone was questioning the validity of her presence in the office because she was white.

47. Hoffman loved the work she did in MSS and did not want to move. However, after eight months of intense hostility and staff questioning her "legitimacy" in the department because of her race and color, she felt she had no choice but to resign as Assistant Director of MSS.

48. In a letter to the Director, Caitlin Lee, Hoffman wrote:

*"While I absolutely love my position and the work I do, I have felt over the last 8 months incredible hostility which has made it difficult to continue on. I have reached out to Maggie dozens of times in person, via email, over the phone in attempts to mediate without success. Last week's meeting on Aug 17th when Charlie said, "I'd feel bad too if everyone constantly questioned my legitimacy in this department" was my breaking point.*

*Like I said I do not want to leave this office or my position. This work has been my home. I have been doing this for the past 6 years and it has been an absolute joy. However, for my mental health and professional safety I don't believe I can stay in this department."*

49. The University did not do anything to help Hoffman retain the job of Assistant Director she had clearly earned. The University did not attempt to mediate to keep Hoffman in her position, the University did not issue a statement that white people are allowed in EDI leadership, and the University did not provide a work environment free of racial harassment**.**

50. The University completely failed to follow its own policy of freedom from discrimination, which states:

*"It is the policy of the UW-Eau Claire to maintain an academic and work environment free of discrimination, discriminatory harassment and retaliation for all students and employees. This policy applies to all programs and activities, and employment practices and operations including the conduct of all students and employees arising out of their employment, educational or academic status, as well as to the conduct of all guests, visitors, vendors, contractors, subcontractors, and others who do business with UW-Eau Claire."*

51. The University completely ignored federal law prohibiting race and/or color from being a factor in employment decisions affecting an individual's compensation, terms, conditions, or privileges of employment.

E.  **Hoffman's complaint of race discrimination and subsequent retaliation**

52. On July 28, 2022, Hoffman filed a complaint of race discrimination with the Office of Affirmative Action and a month later the Human Resource Manager, Jen Steinhorst, met with Hoffman and suggested she drop or "pause" the filing noting there might be career damage if she did not. Hoffman, however, was sure she wanted to move forward with the investigation.

53. On September 2, 2022, just a couple of days before fall classes were to start, Hoffman was pulled off teaching her Gen 100 class without notice and told to provide her course syllabus to Maggie Jensen. This was done in retaliation for Hoffman pursuing her discrimination complaint.

54. Hoffman had previously spoken to Caitlin Lee about teaching the class and it was agreed Hoffman was going to teach it. It would have been Hoffman's fourth year teaching the class and she wanted to teach it.

55. Hoffman felt she was being denied this opportunity, and the additional compensation that went with it, because she had refused to drop her complaint of race discrimination.

56. Hoffman had planned and prepared for the class for four weeks, and she was now being told to provide the syllabus she had prepared to the newly assigned instructor, Maggie Jensen.

57. At a one-on-one meeting, Vice Chancellor Diaz spoke with Chancellor Schmidt about Hoffman's situation. The Chancellor was upset that

Hoffman was pursuing a discrimination complaint stating that it was adding "fuel to the fire".

58. Schmidt inquired why Jenson was not assigned to teach the MSS courses. Hoffman was then removed from teaching MSS courses and told to hand over her class syllabus and passwords to her online Canvas course the Friday before classes started.

59. On Friday, September 2, 2022, Vice Chancellor Diaz met with Chancellor Schmidt, and she let him know she was concerned about the reassignment because Jensen had never taught a course at University of Wisconsin-Eau Claire and her student retention rates were almost forty percentage points lower than Hoffman's. Diaz noted they were risking a greater loss of students by transferring the course to Jensen.

60. Chancellor Schmidt was not concerned about this risk and expressed he was pleased with the transfer of the Gen 100 class away from Hoffman to Jensen.

61. In addition to losing the GEN 100 course she had taught for four years Hoffman was also forced to give up the position of Assistant Director of MSS and demoted to the position of Student Support Services Coordinator.

62. This was not because Hoffman lacked qualifications for the MSS Assistant Director position; rather it was because she identified as "white" and because she complained about the Board's racially motivated employment practices.

13

63. The Board has continued to retaliate against Hoffman by denying her request to work remotely two days a week, by rating her work as "meets expectations" when she was previously rated as "outstanding" and/or "exceeds expectations" and by excluding her from friendly office conversation.

## FIRST CAUSE OF ACTION

64. For a first cause of action against defendant Board of Regents for race discrimination in violation of Title VII plaintiff realleges each of the preceding paragraphs as though set forth fully herein.

65. By engaging in the conduct described above including subjecting plaintiff to a racially hostile and abusive work environment because she identified as white, and further causing plaintiff's constructive demotions from the positions of Interim Director of MSS and Assistant Director of MSS, also because she identified as white, defendant Board of Regents violated plaintiff's right to be free from racial discrimination in employment under Title VII.

66. The actions of defendant Board of Regents described above, were a proximate cause of damages sustained by plaintiff including past and future loss of wages and benefits, psychological injury, emotional distress, loss of reputation, and damage to her career. Plaintiff will continue to suffer these damages in the future.

**SECOND CAUSE OF ACTION**

67. For a second cause of action against defendant Board of Regents for retaliation under Title VII plaintiff realleges each of the preceding paragraphs as though set forth fully herein.

68. By engaging in the conduct described above including taking away plaintiff's GEN 100 class and reassigning the course to Maggie Jensen, forcing plaintiff to resign from her position as Assistant Director of MSS and be demoted to a position in Student Support Services, and continuing to harass plaintiff and subjecting her to racially hostile and abusive work environment, defendant Board of Regents retaliated against plaintiff for opposing racial discrimination, and filing a complaint of racial discrimination with the Office of Affirmative Action.

69. The actions of defendant Board of Regents described above, were a proximate cause of damages sustained by plaintiff including past and future loss of wages and benefits, psychological injury, emotional distress, loss of reputation, and damage to her career. Plaintiff will continue to suffer these damages in the future.

**THIRD CAUSE OF ACTION**

70. For a third cause of action against defendant James C. Schmidt for racial discrimination under the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 plaintiff realleges each of the preceding paragraphs as though set forth fully herein.

15

71. By engaging in the conduct described above including subjecting plaintiff to a racially hostile and abusive work environment because she identified as white, and further causing plaintiff's constructive demotions from the positions of Interim Director of MSS and Assistant Director of MSS, also because she identified as white, defendant Schmidt violated plaintiff's right to be free from racial discrimination in employment under the Fourteenth Amendment and 42 U.S.C. § 1983.

72. The actions of defendant Schmidt described above, were a proximate cause of damages sustained by plaintiff including past and future loss of wages and benefits, psychological injury, emotional distress, loss of reputation, and damage to her career. Plaintiff will continue to suffer these damages in the future.

## FOURTH CAUSE OF ACTION

73. For a fourth cause of action against defendant James C. Schmidt for racial discrimination under 42 U.S.C. § 1981, brought pursuant to 42 U.S.C. § 1983, plaintiff realleges each of the preceding paragraphs as though set forth fully herein.

74. By engaging in the conduct described above including subjecting plaintiff to a racially hostile and abusive work environment because she identified as white, and further causing plaintiff's constructive demotions from the positions of Interim Director of MSS and Assistant Director of MSS, also because she identified as white, and because she had opposed racial

discrimination, defendant Schmidt violated plaintiff's right to be free from racial discrimination in employment and retaliation under the 42 U.S.C. § 1981, pursuant to 42 U.S.C. § 1983.

75. The actions of defendant Schmidt described above, were a proximate cause of damages sustained by plaintiff including past and future loss of wages and benefits, psychological injury, emotional distress, loss of reputation, and damage to her career. Plaintiff will continue to suffer these damages in the future.

## FIFTH CAUSE OF ACTION

76. For a fifth cause of action against defendant Teresa O'Halloran for racial discrimination under the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 plaintiff realleges each of the preceding paragraphs as though set forth fully herein.

77. By engaging in the conduct described above including subjecting plaintiff to a racially hostile and abusive work environment because she identified as white, and further causing plaintiff's constructive demotions from the positions of Interim Director of MSS and Assistant Director of MSS, also because she identified as white, defendant O'Halloran violated plaintiff's right to be free from racial discrimination in employment under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

78. The actions of defendant O'Halloran described above, were a proximate cause of damages sustained by plaintiff including past and future loss of wages and benefits, psychological injury, emotional distress, loss of reputation, and damage to her career. Plaintiff will continue to suffer these damages in the future.

## SIXTH CAUSE OF ACTION

79. For a sixth cause of action against defendant Teresa O'Halloran for racial discrimination under 42 U.S.C. § 1981, brought pursuant to 42 U.S.C. § 1983, plaintiff realleges each of the preceding paragraphs as though set forth fully herein.

80. By engaging in the conduct described above including subjecting plaintiff to a racially hostile and abusive work environment because she identified as white, and further causing plaintiff's constructive demotions from the positions of Interim Director of MSS and Assistant Director of MSS, also because she identified as white, and because she had opposed racial discrimination, defendant Schmidt violated plaintiff's right to be free from racial discrimination in employment and retaliation under the 42 U.S.C. § 1981, pursuant to 42 U.S.C. § 1983.

81. The actions of defendant Schmidt described above were a proximate cause of damages sustained by plaintiff including past and future loss

of wages and benefits, psychological injury, emotional distress, loss of reputation, and damage to her career. Plaintiff will continue to suffer these damages in the future.

## SEVENTH CAUSE OF ACTION

82. The actions of defendants Schmidt and O'Halloran as described above were taken in wanton, willful and/or reckless disregard of the plaintiff's federally protected rights thereby entitling plaintiff to an award of punitive damages against both defendant Schmidt and defendant O'Halloran.

## JURY DEMAND

WHEREFORE, the plaintiff demands a trial by jury on all her claims and relief as follows:

A. Compensation for lost wages and benefits, both past and future,

B. Compensation for psychological injury and emotional distress, loss of earning capacity and damage to her career,

D. Punitive damages against defendant Schmidt and defendant O'Halloran,

E. A finding of unlawful discrimination and retaliation in violation of federal statutory and constitutional law,

F. Reasonable attorney fees and costs incurred,

G.     Any other relief the Court may deem just and proper.

Respectfully submitted this 14th day of December 2023:

        FOX & FOX, S.C.

        S/Mary E. Kennelly
        _____
        Mary E. Kennelly
        SBN # 01019036
        Michael R. Fox
        SBN # 01015173
        124 West Broadway
        Monona, WI 53716
        Telephone:  608/258-9588
        Facsimile:  608/258-9105
        E-mail: mkennelly@foxquick.com